ROBERT H. VANCE, AND FAXAN D. ATHERTON v. JOSE DEMETRIO PEÑA, JESUS PEÑA, JUAN PEÑA, GAVANIO PEÑA, SUMATRIA PEÑA, NESTORIA PEÑA, AND FRANCISCO PEÑA.

CONSTRUCTION OF COVENANT IN DEED.—A tract of land was granted by the Mexican Government to Peña and Vaca, and afterwards patented to them by the United States. Peña conveyed to Vance a portion of said land lying southeasterly of the Alamo Creek, excepting from the conveyance such land as might theretofore have been conveyed by Vaca *and* Peña to any person or persons. Peña covenanted in the deed that if any portion of said land had before been conveyed by Peña *and* Vaca to any person, that he would convey such portion to Vance if he could procure a reconveyance to him; but if he could not, that he would upon reasonable notice convey to Vance other lands, in quantity and quality of equal

value: *held,* that no action lay upon the covenant to convey other lands if a portion of the land intended to be conveyed had before been sold by Peña alone, and not by Vaca *and* Peña.

WHAT COVENANT OF GENERAL WARRANTY RELATES TO.—If a deed conveys a tract of land by metes and bounds, excepting therefrom such portion of such land as may have before been conveyed by the grantor to other persons, and contains a general covenant of warranty of the land thereby intended to be conveyed, and also a covenant that if any portion of the land has been before conveyed to other persons, the grantor will convey to the grantee other lands of like quantity and quality; the former covenant relates to lands which the deed purports to convey, and not to the land which the grantor covenanted to convey in the latter covenant.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The complaint averred that before 1846 the Mexican Nation granted to Juan Philippi Peña and Manuel Vaca a tract of land in Upper California, known by the name of "Los Putos Rancho," and that afterwards the same was confirmed to them by the Courts of the United States, and a patent was issued to them therefor. That on or about the 7th day of November, 1853, the said Juan Philippi Peña, by his deed of conveyance bearing that date, for the consideration of the sum of ten thousand dollars, therein expressed, undertook to convey to the said Robert H. Vance, and for that purpose did make, execute, and deliver his said deed of conveyance to the said Vance, for the following described piece and parcel of land, being a part of the said Rancho of Los Putos, and contained within the said confirmation and patent, viz: All that certain piece, parcel, or tract of land, situate in said County of Solano, and bounded and described as follows, to wit: Beginning at a certain dead tree standing about six rods from the base of the hill on the easterly side of the hill which lies between the Laguna Valley, in which said Peña lives, and the open plains on the easterly side of said hills—the said tree being on the southerly line of the rancho of Vaca and Peña, as surveyed by Presley Dunlap as United States Deputy Surveyor; thence northerly, meandering the base of said hills, to a cluster consisting of four trees about six rods from the Alamo Creek, about five hundred and forty-

four rods from the place of beginning; thence in a straight line, east, to said creek; thence down said creek to the eastern line of said rancho, as surveyed by said Dunlap; thence southerly with said Dunlap's surveyed line, to the southeasterly corner, as surveyed by the said Dunlap, of the said rancho in that portion thereof; thence in a straight line, westerly, to the place of beginning; excepting, however, all such lands lying on the southeasterly side of said creek as may have heretofore been conveyed by Manuel Vaca and said Peña to any person or persons whatever, to which deed the plaintiffs will refer for greater certainty. That the said deed of conveyance contained the following covenant on the part of the said Peña, viz; " And I, the said Peña, do hereby covenant and agree to and with said Vance, and his heirs and assigns, that if any of said lands lying on the southerly side of said creek has heretofore been conveyed by said Vaca and Peña to any person or persons, except that portion thereof that one William Fore has purchased and occupies, or claims at the date hereof; that in that case the said Peña will hereafter convey any of such portions of such lands as shall be conveyed to him unto the said Vance, or his heirs or assigns; and, in case said Peña may not be able to procure a conveyance to himself, to such portions of said lands lying on the southerly side of said creek, which may have been conveyed heretofore as aforesaid, then said Peña shall and will upon reasonable notice convey unto said Vance, or to his heirs or assigns, other lands in said County of Solano, (of him, said Peña,) in quantity and quality of equal value to such lands as may have been conveyed as aforesaid, on the southerly side of said creek, excepting, however, any lands now possessed by said Fore, under claim of title." And the said deed also contained the following covenant of warranty : " And the said Peña doth hereby further covenant and agree to and with the said Vance and his heirs and assigns, to warrant and defend the said Vance, and his heirs and assigns, to the quiet and peaceable posses-

sion of the said tract and parcel of land hereby intended to be conveyed, against him, (the said Peña, his heirs and assigns,) and against all and every person and persons whosoever, lawfully claiming, or to claim, the same, except such portions of land lying on the southerly side of said creek, as hereinbefore mentioned or excepted." That on the 14th day of January, 1853, the said Juan Peña, by his deed of conveyance bearing that date, conveyed to John Curry and Jeremiah Clarke a certain part and portion of the said ranch so patented as aforesaid, which said lands are and were described in the said deed. That the said Peña always claimed that, at the time of the making of the said deed to the said Curry and Clarke, it was not intended to include any part or portion of the said lands conveyed by and included in the said deed from the said Peña to the said Vance, nor did the said Peña believe that the said deed to the said Curry and Clarke included, conveyed, or affected any of the said lands so conveyed to the said Vance aforesaid; and from the exception contained in said deed, and from the terms of said deed to said Curry and Clarke, the said Peña did not at any time during his lifetime believe or admit that the said deed to Curry and Clarke included or conveyed any such lands, but always denied and protested against any such claim or construction of the said deed. That, after the said Peña had made his deed to the said Vance, as aforesaid, they (the said Curry and Clarke,) claimed and insisted the said deed from the said Peña to them included and conveyed to them six hundred acres of the said lands included in the said deed from the said Peña to the said Vance, and by virtue of and under the said deed to them from said Peña aforesaid, the said six hundred acres were conveyed to them, and that they were the owners thereof; and that afterwards they, the said Curry and Clarke, sold and conveyed the said six hundred acres of land to different persons, by deeds of conveyance, and that under such deeds their said grantees entered upon and took possession of the said lands so conveyed to them by the said Curry

and Clarke, and claimed to be the owners thereof against the said Peña and the said Vance; that afterwards, and during the lifetime of the said Peña, and with the knowledge and approbation of the said Peña, an action was brought in the name of the said Vance, and against the said grantees and the persons claiming and holding under the said Curry and Clarke, and under the aforesaid deed, in the Seventh Judicial District in and for the County of Solano, to recover the said six hundred acres of land; and that such proceedings were had in the said District Court, and on appeal to the Supreme Court of this State, that, by the final judgment of the said Supreme Court, it was determined that the said six hundred acres were included in the said deed from the said Peña to the said Curry and Clarke, and that the said six hundred acres were fully conveyed by the said deed to the said Curry and Clarke; that the said final judgment was rendered and perfected in favor of the defendants and against the plaintiff in the said action, at the April Term of the said Supreme Court, for the year 1864; that by the said judgment the said six hundred acres are now claimed, possessed, and owned by the said grantees and persons holding under the said Curry and Clarke aforesaid. That the said Juan Peña died on or about the 15th day of March, 1863, intestate, leaving him surviving several children, among whom are the said defendants José Demetrio Peña, Jesus Peña, Gavanio Peña, Sumatria Peña, Nestoria Peña, Francisco Peña, and Juan Peña. That the said Peña, during his lifetime, did not procure any conveyance or transfer of the said six hundred acres of land aforesaid, nor any part thereof, from any person or persons, nor were any conveyances or any transfer of any kind, of the said six hundred acres or any part thereof, obtained from any person or persons to the said Peñas or to the said Vance, or to any other person or persons on their behalf. That after the said patent was issued, and on the 12th day of December, 1859, said Peña was seized and possessed of about seven thousand acres of said ranch, unincumbered and in fee simple absolute.

That at various times in 1859 and 1861 he conveyed to defendants in several parcels all of said seven thousand acres. That said Peña was bound by his covenant to. hold in his own right so much of said seven thousand acres as would be necessary to satisfy the said covenant. That said conveyances were made by Peña to the ·defendants without any consideration, and to deprive him of the means of satisfying his covenant; and that defendants took the deeds from Peña with full knowledge of the covenant. That after the said Peña had thus conveyed the seven thousand acres, he was not the owner of any other lands. That the defendants had not conveyed any part of the seven thousand acres. That, February 5th, 1862, Vance had executed to Atherton a deed of the lands he had acquired from Peña, which deed was intended as a mortgage to secure a debt from Vance to Atherton. That the defendants held the land so conveyed to them by Peña in trust for the purposes of the full performance and fulfilment of the covenant, and were bound to convey to plaintiff so much of the same as should be necessary to perform and fulfil the covenant.

The defendants demurred to the complaint; the Court sustained the demurrer, and dismissed the complaint.

The plaintiffs appealed from the judgment.

*S. F. & J. Reynolds*, for Appellants.

It is quite clear that the two covenants, when taken together, were intended by the parties to convey all of the lands described in the deed from Peña to Vance. It evidently appears from the whole case, that there was a doubt whether any of these lands had been before conveyed to any one, either by Peña and Vaca jointly, or by Peña alone; and the doubt and difficulty with them were whether the deed to Curry and Clarke contained any of those lands. That it was intended that the covenants should apply to any of those lands which might be thereafter found to be included in the Curry and Clarke deed, is very clear and evident, from the

fact of Peña insisting that none of such lands were so included in that deed, and consenting that a suit be brought in the name of Vance to settle that question and to recover the lands from Curry and Clarke's grantees. The lands belonged to Vaca and Peña in common, and, therefore, the covenant, as it very properly might, provided that if any of the lands had been conveyed by Vaca *and* Peña, then such further conveyance should be made. The word " and " may be read " or " in order to effect the intention. In construing covenants, it must be taken most strongly against the covenantor and in favor of the covenantee. (Sheppard's Touchstone, 166.) And it is a well settled rule that the intent of the parties, and the spirit of the covenant, are to be taken into consideration in the construction. The beneficial end which the parties had in view is to be primarily regarded and enforced. The whole deed and the covenants are to be read together, and from the reading of the whole, with the intent and object of the parties in making the sale and purchase, the true rule in interpreting that object is furnished. If the intention of the parties be doubtful, that construction will be adopted which is most beneficial to the covenantee, and will give to him the intended relief and benefit of the covenant. (*Betts* v. *Turner*, 1 Johns. Cas. 70 ; *Martin* v. *Stow*, 2 Cow. 806.)

In *Windham's Case,* 5 Coke, 7, a lease of one piece of land to A. for ten years, of another piece to B. for twenty years, and then the lessor made another lease of both pieces to C. for forty years, to begin at the end and determination of the leases to A. and B. The question was, when the last lease began. The Court held that it should commence at the end of ten years' lease. The Court say, " that every deed shall be taken more strongly against the grantor and more beneficially for the grantee, and it is more strong against the lessor, and more beneficial for the lessee to have the last lease to begin presently after the expiration of the first lease than to wait till the lease for twenty years." The Court further say, that " If I release to another all actions which I

have against you *and* another, in this case, notwithstanding the joint words, all actions which I have against you, alone, are released, for it shall be most beneficially for him to whom the release is made, and most strongly against him who makes it; and the *joint* words of the parties shall be taken *respectively* and *severally*."

In *Duvall* v. *Craig*, 2 Wheat. 45, John Craig *and* Sarah, his wife, *and* Robert Johnson *and* Elijah Craig, covenanted that the lands were free of incumbrances, whatsoever done or suffered by John *and* Sarah, *and* Robert *and* Elijah; and then followed a full covenant of warranty, and also that if the lands, or any part thereof, should be taken by any prior claims, that then the said John *and* Sarah, *and* Robert *and* Elijah, shall make good such loss. There was an incumbrance created by John and Robert alone. It was contended that the covenant was against the joint and not the several acts of the parties, and that the breach by John and Robert, alone, was wholly insufficient. But the Court held that a covenant of this nature ought to be construed several as well as joint. Mr. Justice Storey cites several authorities, and on examination of them and his own opinion, it will be found that the construction is given to carry out the intention and object of the parties. The same principle of construction is held and explained in the following authorities: *Ernst* v. *Bartle*, 1 Johns. Cas. 327 and note *a; Ludlow* v. *McCrea*, 1 Wend. 231; Broome's Legal Maxims, 418–19; *Kinloss* v. *Lansing*, 6 John. 49; Sheppard's Touchstone, 139; *Westcott* v. *King*, 14 Barb. 37; *Eccliston* v. *Clipshaw*, 1 Sand. 154, note 1.

*M. A. Wheaton*, for Respondents.

It is contended by the plaintiffs' counsel that the two covenants should be read together, and that taken together they show that Peña intended to convey all of the lands described in the deed to Vance. This position I think incorrect, and irrelevant if correct. I think it incorrect

because the exceptions in the deed and covenant of warranty would not have been inserted if the parties had intended to convey the land covered by the exceptions, and the covenant for a *future conveyance* would not have been inserted if the parties had intended that the two covenants taken together should work a conveyance of all the land. And I think the position irrelevant, because if correct it neither strengthens nor weakens the plaintiffs' case nor defendants' defence. This action is brought alone upon the covenant for a future conveyance. It is not an action upon the covenant of warranty; the warranty affects *only* the land *conveyed* by the deed; this action and the covenant upon which it is brought affect only the land *not* conveyed by the deed. There is no pretence that there is any failure of title to the lands covered by the warranty; no pretence that there is any breach of the warranty, and the warranty contains no allusion to the covenant sued on or its subject matter, further than to except them from its operation. The covenant, by its terms, is confined to lands which had been conveyed by Vaca *and* Peña, and not to lands which had been conveyed by Peña alone. The lands conveyed to Curry and Clarke were conveyed by Peña *alone*, and not by Vaca and Peña. The complaint does not show that any lands had been conveyed by Vaca *and* Peña, and therefore the *letter* of the covenant had never been broken.

The complaint further shows that Peña did not believe or admit during his lifetime that the deed to Curry and Clarke included any of the lands included in the deed to Vance. The lands then conveyed by the deed to Curry and Clarke could not have been the lands that Peña *intended* to cover by his covenant. And therefore there has been no breach of either the letter or intention of the covenant.

By the Court, SHAFTER, J.:

The only lands which the deed of Juan Felipe Peña to the plaintiff Vance purports to convey on the southeasterly side of the creek, referred to in the deed, are lands that had not been conveyed by Vaca and Peña prior to the date of the deed to some person or persons other than William Fore. The covenant of warranty in the deed relates to lands which the deed purports to convey, and not to the lands contemplated by the covenant on which the action is brought, and which lands the deed does not purport to convey. This latter covenant contains two alternative stipulations; one to the effect that if it shall turn out that any of the lands lying on the southerly side of the creek have theretofore been conveyed by "Vaca and Peña" to any person or persons other than Fore, he, Peña, will convey those lands to Vance in the event that they shall be reconveyed to him, Peña. But if the lands so distinguished should turn out to have been conveyed by Vaca and Peña to any person other than Fore, and if Peña should fail to procure them to be conveyed to himself, then Peña covenanted that he would convey to Vance other lands in the County of Solano equal in value to the lands aforesaid.

Under both these alternative stipulations, the obligation of Peña to convey land to Vance is made to depend upon whether Peña and Vaca had made any joint conveyance of land on the south side of the creek prior to the date of the covenant. No such joint conveyance is alleged, and the complaint is bad in not stating a *casus foaderis* under the covenant counted on.

Judgment affirmed.

Neither Mr. Chief Justice CURREY nor Mr. Justice RHODES expressed an opinion.